## CITY OF ABILENE v. STATE.

### No. 1731.

Court of Civil Appeals of Texas. Eastland.

Dec. 17, 1937.

Rehearing Denied Feb. 11, 1938.

Wiley L. Caffey and Edmund C. Yates, both of Abilene, for appellant.

E. G. Aycock, of Fort Worth, and Omar T. Burleson and Gilbert C. Smith, both of Anson, for appellee.

FUNDERBURK, Justice.

On January 1, 1928, and at various other dates, up to and including December 12, 1930, the City of Abilene, a municipal corporation, acquired by purchase about 34 tracts of land situated in Jones county for the purpose of a reservoir site for impounding water for the use of said city and its inhabitants. This suit was brought in the name of the State of Texas to recover state, county (of Jones), and school taxes, levied, assessed, and delinquent upon said land for years, included within the time of such ownership; and to foreclose the tax liens upon the several tracts. A nonjury trial resulted in a judgment for the plaintiff awarding recovery of taxes in the aggregate sum of $7,767.28, with interest, penalty, and costs, and decreeing a foreclosure of the tax liens as prayed. The City of Abilene has appealed.

The judgment was warranted and proper, unless by constitutional provisions or valid statutes, said property was not subject to, or was exempt from, taxation.

The honorable trial judge in response to proper request filed findings of fact and conclusions of law. From such it appears that said city had procured from the proper authority the necessary appropriation of water; that bonds in the sum of $350,000 had been authorized for

"the purpose of extending and improving the water works system of" said city and "for purchasing the lands involved in this suit for the purpose of building a lake to supply the inhabitants of the City of Abilene an additional water supply"; that engineering work at a cost of $4,000 had been done; that the lands are necessary "to the accomplishment of extending and improving the water works system of the city of Abilene"; that "on account of insufficient funds" said city "has been unable to acquire all the land necessary to the completion of the project * * * or to erect the necessary dam for the reservoir on such land"; that "defendant has not abandoned its intention to accomplish the purpose for which said lands were acquired and it has been its intention continuously since voting of the bonds" on October 5, 1928, "to ultimately acquire such lands to complete such reservoir and to accomplish additional water supply to its inhabitants"; that the defendant had not constructed the necessary dam or reservoir for the storage water on the land, "nor is such land or any part thereof being actually used for such purpose."

Other significant findings were to the effect that since acquisition of the lands by said city, it had "been leasing same for agricultural purposes for an approximate aggregate annual rental of $2,500 and that during the past five years cash rentals have been paid therefor and that prior to that time receipts from said property in cash were based upon annual production of agricultural products under the normal 1/3 and 1/4 rentals. That said property is at this time leased and that said lands are being prepared for the production of agricultural commodities for the current year"; that the leases "have in all of said years been made expressly subject to the rights of the city of Abilene to build the dam and reservoir on said property at any time."

The conclusion of law was that the property was not exempt from taxation.

The question of the exemption of said property from taxation involves the proper interpretation of constitutional and statutory provisions, the material portions of which, are as follows:

Const. art. 8, § 1: "*All property* in this State, whether owned by natural persons or corporations, *other than municipal,* shall be taxed in proportion to its value.

* * * Provided, that two hundred and fifty dollars worth of household and kitchen furniture, belonging to each family in this State shall be exempt from taxation."

Const. art. 11, § 9: "The property of counties, cities and towns, owned and held *only* for public purposes, * * * and all other property *devoted exclusively to the use and benefit* of the public shall be exempt from * * * taxation."

Const. art. 8, § 2: "The Legislature may, by general laws, exempt from taxation *public property used for public purposes; actual* places of religious worship; places of burial *not held for private or corporate profit*; all buildings *used exclusively* and *owned by* persons or associations of persons for school purposes and the necessary furniture of all schools, [also the endowment funds of such institutions of learning and lands] and institutions of *purely public charity;* and all laws exempting property from taxation other than the property above mentioned shall be null and void." (Italics ours.)

Revised Statutes 1925, art. 7150:

"The following property shall be **exempt** from taxation, to-wit: * * *

"All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof."

The question presented for our decision appears to be one of first impression. The question may be stated thus: When a city becomes the owner of land acquired for a public purpose and there is delay in the actual use of it for such purpose, will the temporary renting of the land and the use thereof by tenants for agricultural purposes, in the absence of an abandonment of such public purpose, place such property beyond the power of the Legislature to provide for its exemption from taxation until such time as the property be actually used for such public purpose? Counties, cities, and towns are municipal corporations. Const. art. 11. They are political subdivisions of the state. Id. Corporation of San Felipe De Austin v. State of Texas, 111 Tex. 108, 229 S.W. 845. Property owned and held by counties, cities, and towns is public property, subject to taxation or exemption, according to the conditions or circumstances prescribed by the Constitution and laws of the state. That the property in question is public property was determined in City of Dallas v. State, Tex.Civ.App., 28 S.W.2d 937. The

634

Legislature by general law has provided that "All property, whether real or personal, belonging exclusively to this State, or *any political subdivision* thereof" shall be exempt from taxation. (Italics ours.) R.S.1925, art. 7150. The terms of this statutory exemption undoubtedly include the property in question. If, therefore, the entire validity of said statute could be assumed, its plain provisions would control the determination of the question at issue in favor of the claimed exemption.

■ But the statute cannot be accepted as conclusive. The power of the Legislature to make valid provisions for exemptions from taxation is hedged by constitutional provisions of at least two distinct kinds. One kind of such provisions operates to prohibit the Legislature from taxing certain property. Examples of these provisions are "two hundred and fifty dollars worth of household and kitchen furniture, belonging to each family in this state" as provided in Constitution, art. 8, § 1; "the property of counties, cities and towns, owned and held only for public purposes" or "all other property devoted exclusively to the use and benefit of the public" as provided in Const. art. 11, § 9; and $3,000 of the assessed taxable value of all resident homesteads, as to state taxes, according to the provision of Constitution, art. 8, § 1-a. In such cases the exemptions are but the incidental, though necessary, effect of the lack of power in the Legislature to subject such property to taxation. A provision of an entirely different nature from the above, also limiting and restricting the power of the Legislature to make valid provision for exemptions from taxation, is that found in Constitution, art. 8, § 2, that "all laws exempting property from taxation other than the property above mentioned shall be null and void." It thus appears that as to some kinds of property, under certain circumstances or conditions, the Legislature is without power to make valid provision for its taxation; while as to other kinds of property, under certain circumstances and conditions, the Legislature is without power to make valid provisions for its exemption from taxation. Between these must exist the subjects as to which the Legislature may provide for exemptions.

■ The Constitution, art. 8, § 2, purports to specify the subjects of taxation which the Legislature is authorized to provide shall be exempt. It is a natural and reasonable assumption that such specifica-

tion will not include subjects which by other provisions of the Constitution the Legislature, in effect, is prohibited from taxing. It would be an idle and meaningless thing for the Constitution to undertake to grant to the Legislature the power to provide for the exemption of property which the Legislature was, in any event, prohibited from taxing. The constitutional provision in question has no such import and is therefore to be understood, we think, as excluding from the subjects of authorized statutory exemptions those, the taxation or exemption of which, is prohibited by the Constitution itself.

■■ If the Legislature has the power, validly, to provide for the exemption of the property in question, it is perforce of the provision of Constitution, art. 8, § 2, that "the Legislature may, by general laws, exempt from taxation public property used for public purposes." Is the property in question public property, used for public purposes within the meaning of said provision? There being no question of its being public property, nor that the purpose for which it is owned and held is a public purpose, the inquiry is really narrowed to a consideration of whether it was *used* for that purpose, within the true meaning of the word "*used*." This express grant of power to the Legislature to provide for the exemption of public property "used for public purposes" must be interpreted in the light of the constitutional exemption of "The property of counties, cities and towns, owned and held only for public purposes" as provided in said article 11, § 9. Public property used for such purposes must, therefore, be something different from, and exclusive of, "property of counties, cities and towns owned and held only for public purposes." But since, as already stated, the property of counties, cities, and towns is public property, then it must be true that the power of exemption only applies to public property owned and held for public purposes, but not owned and held "only" or "exclusively" for such purposes. By such a construction only, so far as we can see, can conflict between the two constitutional provisions be avoided. Had article 8, § 2, purported to grant the power to exempt "public property used" exclusively or only "for public purposes," there would appear to be a direct conflict, since the power to exempt would necessarily imply that unless such power was exercised the property would be subject to taxation. These considerations lead us to the conclusion that as

to the power of the Legislature, to exempt public property from taxation, all such property should be regarded as "used for public purposes" when it is owned and held for public purposes, but not owned or held exclusively for such purposes; and there has been no abandonment of such purposes.

■ No valid argument can be made, we think, that public property owned and held only for public purposes is not beyond the power of the Legislature to tax. As said in Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99, 102, in speaking of said article 11, § 9, it "exempts from taxation 'property of counties, cities, and towns owned and held for public purposes,' * * * What the constitution exempts from taxation the legislature has no power to require to be taxed."

■ But what about public property owned and held for public purposes but partly used for other purposes? Can there be any doubt that such property is subject to taxation, unless its exemption is, in the first place, authorized by Constitution, art. 8, § 2, and, in the next place, is provided for by a general law enacted by the Legislature? Does article 8, § 2, empower the Legislature to provide for the exemption of such property? There can be no doubt of it, if it can be said that such property is used for public purposes. If public property is not used for public purposes, then the Legislature has no power to provide for its exemption, because any power that it might otherwise have, independently of constitutional authorization, is expressly prohibited by the declaration of said section 2 that "all laws exempting property from taxation other than the property above mentioned shall be null and void."

■ We are not unmindful of the rule that provisions for exemption from taxation are to be strictly construed. The goal of construction, however, is the ascertainment of intention. It is not believed that the rule of strict construction would require the adoption of the least reasonable of two possible constructions, and particularly if that one be 'less effective to accomplish the manifest purpose of the exemption. In the phrase "used for public purposes," if the word *"used"* be construed to mean the same as *exclusively used,* then as we have already seen there would be conflict between constitutional provisions. Such result forbids, therefore, the adoption of that construction. It remains, however, to consider whether the word "used" should

be construed to mean the same as continuously, uninterruptedly, or unremittently used. Such a meaning must be ascribed to the word to justify the conclusion that the Legislature was without power to provide for the exemption of the property in question. Let us consider how such a construction would operate as applied to supposeable cases. Would a county jail become subject to taxation when from the lack of prisoners it was not actually used for a time exceeding a taxing period? Would a county courthouse site, or a city hall site, be subject to taxation and beyond the power of the Legislature to exempt it, if no operations to build the courthouse or city hall had been commenced on the 1st day of January following acquisition? Even if building operations were in progress, could it be said within such a strict meaning of the word that the property was being *used* for public purposes? It would certainly not be so used in the same sense that it would be, after the completion and occupancy of the courthouse or city hall by the several agencies of government. In the instant case, suppose that with extraordinary expedition a dam had been completed, but that for more than a year, including the beginning of one or more years, because of lack of rain no water had been impounded and for that reason no actual use could be made of the property. Could it be said in that case that the property was subject to taxation because the Constitution denied the Legislature authority to provide for its exemption? We think to hold that the word "used" was intended to have any such meaning would be unreasonable and would defeat in a large measure the manifest purpose of the grant of power to declare exemptions. It is, therefore, our view that when the facts of a given case establish the ownership of property by a municipal corporation, which has been acquired for an authorized public purpose, and the purpose for which it is owned and held has not been abandoned, such property is to be regarded as used for public purposes, and the Legislature has the power to provide by general law for its exemption from taxation.

■ It is quite apparent that the exemption declared in said R.S.1925, art. 7150, is more comprehensive than the power which the Legislature possessed. The purport of the statute is broad enough to exempt public property regardless of its use. This the Legislature was expressly denied the power to do. But it does not follow, we think, that the statute is for that reason

wholly inoperative. We see no reason why it may not be operative, as an exercise of all the power the Legislature had, to declare the exemption. The declared exemption includes public property used for public purposes and to that extent, we think, the statute valid and operative.

The various subject-matters of the decisions relied upon by the state are so essentially different from that involved in this case that we deem it inadvisable to lengthen this opinion by a discussion of the distinctions.

It is our conclusion that the court erred in his conclusion of law; that judgment should have been rendered for the defendant, for which reason the judgment of the court below should be reversed and judgment be here rendered that appellee take nothing by its suit. It is accordingly so ordered.